UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GRYPHON NETWORKS CORP., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CONTACT CENTER COMPLIANCE CORP. and ) <br> DAVID KEIM, ) <br> ) <br> Defendants. ) <br> ) | CIVIL ACTION <br> NO.: 10-10258 |

## SUPERSEDING JOINT STATEMENT
## PURSUANT TO LOCAL RULES 16.1(d) AND 16.6

Pursuant to Fed. R. Civ. P. 26(f) and District of Massachusetts Local Rules 16.1(d) and 16.6, plaintiff Gryphon Networks Corp. ("Gryphon") and defendants Contact Center Compliance Corp. ("CCCC") and David Keim ("Keim") (collectively, the "Defendants") submit this Superseding Joint Statement pursuant to Local Rules 16.1(d) and 16.6.

## I.    INTRODUCTION

On February 16, 2010, Gryphon filed a complaint alleging that CCCC infringes U.S. Patent No. 6,130,937 ("the patent-in-suit") and that the patented technology relates generally to Do-Not-Call compliance systems.  On February 24, 2010, Gryphon amended that complaint to include allegations that Keim is in breach of the Employee Confidentiality, Inventions and Non-Competition Agreement (the "Agreement") he entered into with Gryphon and that CCCC induced that breach.  Gryphon seeks declaratory and injunctive relief against both defendants.

On March 17, 2010, CCCC filed Answers and Counterclaims.  CCCC contends that the patent-in-suit is invalid because it fails to meet the conditions for patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.  CCCC also contends that the Agreement is unenforceable because (1) it is unduly broad in duration, scope, and territory; (2) the information Gryphon seeks to protect is not confidential and does not constitute trade secrets; (3) Keim is a Georgia

resident and CCCC is a California corporation and the Agreement violates the law and public policy of those states. CCCC counterclaimed for declaratory judgment of non-infringement and invalidity on the patent claims and invalidity and unenforceability of the Agreement.

On March 17, 2010, Keim filed Answers and Counterclaims. Keim contends that the Agreement is unenforceable because (1) it is unduly broad in duration, scope, and territory; (2) the information Gryphon seeks to protect is not confidential and does not constitute trade secrets; (3) Keim is a Georgia resident and CCCC is a California corporation and the Agreement violates the law and public policy of those states. Keim also counterclaimed for declaratory judgment of unenforceability and invalidity of the Agreement.

On June 11, 2010, the parties filed a Joint Motion for Entry of Stipulated Preliminary Injunction. On June 25, 2010, the Court entered the Stipulated Preliminary Injunction (the "SPI").

Following entry of the SPI, the parties engaged in extensive good faith settlement negotiations, including face-to-face meetings between counsel. Ultimately, the settlement discussions proved unsuccessful. However, in light of the extensive time spent discussing settlement and given that the Court has not yet held the Rule 16 Conference, the parties have fallen behind the initial proposed pre-trial schedule, which was never entered by the Court. As such, the parties wish to propose a revised proposed pre-trial schedule, as set forth below.

A/73356254.9/0800549-0000344069

## II.    PROPOSED PRETRIAL SCHEDULE

The Parties submit the following pretrial schedule for the Court's consideration:

| Event | Proposed Date |
|---|---|
| <u>Initial Disclosures</u>: The Parties shall serve Initial Disclosures under Fed. R. Civ. P. 26(a). | Served |
| <u>Gryphon's Preliminary Infringement Contentions</u>: Gryphon shall serve and file its preliminary disclosure of the claims infringed.  Gryphon shall specify which claims are allegedly infringed and identify the accused product(s) or method(s) that allegedly infringe those claims.  Gryphon shall also specify whether the alleged infringement is literal or falls under the doctrine of equivalents.  If Gryphon has not already done so, Gryphon shall produce all documents supporting its contentions and/or identify any such supporting documents produced by the accused infringer.  Such disclosures may be amended and supplemented up to 30 days before the date of the Markman Hearing.  After that time, such disclosures may be amended or supplemented only pursuant to Local Rule 16.6 Appendix ¶ D(l) or by leave of court, for good cause shown.  Gryphon may use a table such as that set forth in Local Rule 16.6 Appendix ¶ A(1) for its disclosure. | Served |
| <u>Defendants' Preliminary Non-Infringement and Invalidity Contentions</u>: Defendants shall serve and file their Preliminary Invalidity and Non-Infringement Contentions.  Defendants shall identify prior art that anticipates or renders obvious the identified patent claims in question and, for each such prior art reference, shall specify whether it anticipates or is relevant to the obviousness inquiry.  If applicable, Defendants shall also specify any other grounds for invalidity, such as indefiniteness, best mode, enablement, or written description.  If Defendants have not already done so, they shall produce documents relevant to the invalidity defenses and/or identify any such supporting documents produced by Gryphon.  Further, if Defendants have not already done so, they shall produce documents sufficient to show operation of the accused product(s) | September 16, 2010 |

| | |
|---|---|
| or method(s) that the patentee identified in its preliminary infringement disclosures.  Such disclosures may be amended and supplemented up to 30 days before the date of the Markman Hearing.  After that time, such disclosures may be amended or supplemented only pursuant to Local Rule 16.6 Appendix ¶ D(1) or by leave of court, for good cause shown, except that, if Gryphon amends or supplements its preliminary infringement dise1osures, Defendants may likewise amend or supplement their disclosures within 30 days of service of Gryphon's amended or supplemented infringement disclosures.  Defendants may use the charts in L.R. 16.6 Appendix ¶ A(2) for their disc1osures. | |
| <u>Preliminary Lists of Claim Terms</u>:  The Parties shall simultaneously exchange lists of claim terms to be construed and their proposed constructions. | January 7, 2011 |
| <u>Claim Construction Meet and Confer</u>:  The Parties shall confer on the list of claim terms to be construed and their proposed constructions. | No later than January 11, 2011 |
| <u>Parties File Opening Claim Construction Briefs</u>: Each brief shall contain a list of terms construed, the party's proposed construction of each term, and evidence and argument supporting each construction. Absent leave of court, preliminary claim construction briefs shall be limited to 25 pages, double spaced, of at least 12-point Times New Roman font or equivalent, inc1uding footnotes. | January 27, 2011 |
| <u>Parties File Responsive Claim Construction Briefs</u>: Absent leave of court, reply briefs shall be limited to 15 pages, double spaced, of at least 12-point Times New Roman font or equivalent, inc1uding footnotes. | February 11, 2011 |
| <u>Parties File Joint Claim Construction and Prehearing Statement</u>: The Parties shall prepare and file a joint claim construction and prehearing statement that identifies both agreed and disputed terms.<br><br>(a) The joint statement shall note the anticipated length of time necessary for the claim construction hearing and whether any party proposes to call witnesses, including a statement that such extrinsic | February 28, 2011 |

- 4 -

| | |
|---|---|
| evidence does not conflict with intrinsic evidence.<br><br>(b) The joint statement shall also indicate whether the Parties will present tutorials on the relevant technology, the form of such tutorials, and the timing for such tutorials in relation to the claim construction hearing.  If the Parties plan to provide tutorials in the form of briefs, declarations, computer animations, slide presentations, or other media, the Parties shall exchange such materials within 5 days before the claim construction hearing.  In the alternative, the Parties may present tutorials through presentations by the attorneys or experts at the claim construction hearing.<br><br>(c) The joint statement shall include a proposed order in which Parties will present their arguments at the claim construction hearing, which may be term-by-term or party-by-party, depending on the issues in the case.<br><br>(d) The joint statement shall limit the number of claim terms to be construed and shall prioritize the disputed terms in order of importance.  The Parties will attempt, in good faith, to identify no more than ten (10) terms in each of the asserted patents that require construction.<br><br>(e) The joint statement shall include a joint claim construction chart, noting each party's proposed construction of each term, and supporting evidence. The Parties may use the form in Local Rule 16.6 Appendix ¶ B(4)(e). | |
| Claim Construction (Markman) Hearing | TBD (by the Court) |
| Dispositive Motions - Opening Briefs | No later than 150 days after Markman Ruling |
| Dispositive Motions - Opposing Briefs | 30 days after filing of Dispositive Motions and Opening Briefs |
| Dispositive Motions - Reply Briefs | 15 days after filing of Opposing Briefs |

A/73356254.9/0800549-0000344069

| | |
|---|---|
| <u>Amendments to the Pleadings</u>: Amendments to the pleadings under Fed. R. Civ. P. 15 and motions for joinder of any additional Parties under Fed. R. Civ. P. 19 and 20 are due. | 21 days after Markman Ruling |
| <u>Amendments to Preliminary Contentions</u>:  The Parties may amend their preliminary infringement, non-infringement, and invalidity contentions, noting whether any infringement or invalidity contentions are withdrawn. | 30 days after Markman Ruling |
| All requests for production of documents and interrogatories must be served | 15 Days after Markman Ruling |
| All requests for admission must be served | 60 days before Trial |
| All depositions, other than expert depositions, must be completed | 45 days after Markman Ruling |
| Fact Discovery Cutoff | 45 days after Markman Ruling |
| <u>Opening Expert Reports</u>: Each side discloses expert witnesses on issues for which the party has the burden of proof, and provides reports for its experts in accordance with the Rules of Civil Procedure and the Local Rules of the District Court for the District of Massachusetts. | 60 days after Markman Ruling |
| Rebuttal Expert Reports | 90 days after Markman Ruling |
| All depositions of trial experts must be completed | 150 days after Markman Ruling |
| Expert Discovery Cutoff | 150 days after Markman Ruling |
| <u>Final Pretrial Conference</u>: The Parties shall prepare and submit a pretrial memorandum in accordance with Local Rule 16.5(D) five business days prior to the date of the conference, except that the parties need not include matters required by Local Rule 16.5(D)(2) or (3). | TBD (by the Court) |
| Trial Dates | TBD (by the Court) |

### III.     JOINT DISCOVERY PLAN

#### A.      Phased Discovery

The Parties do not presently propose conducting discovery in phases.

<u>Defendants' Position</u>

Defendant has filed with the U.S. Patent and Trademark Office a Request for Reexamination of the patent-in-suit.  Pursuant to 35 U.S.C. § 305, 37 Code Fed. Regs. 1.515, and the PTO's Manual of Patent Examination Practices, § 2209, the PTO must decide whether to grant that request by August 4, 2010.  If the request is allowed, there is a substantial likelihood that the claims at issue in this case could be narrowed or invalidated; in either event, Gryphon will be unable to enforce the patent against CCCC.  *See Bloom Eng'g Co. v. N. Am. Mf'g Co.*, 129 F.3d 1247, 1250 (Fed.Cir.1997) ("Unless a claim granted or confirmed upon reexamination is identical to an original claim, the patent can not be enforced against infringing activity that occurred before issuance of the reexamination certificate.").  Accordingly, Defendant expects at that time to move to stay any further action in this Court respecting the infringement or validity of the patent-in-suit pending the disposition of the reexamination.  *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed.Cir.1988) (District court has "inherent power to manage [its] dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination" and re-issue.).

<u>Plaintiff's Position</u>

Plaintiff will oppose any such motion.  Discovery is necessary in the case against Keim and the non-patent claims against CCCC, including those issues raised by the SPI.  Given that the case is proceeding on all the non-patent claims, it makes no sense and is a waste of the parties' and the Court's resources for Plaintiff to seek a stay of the case solely "respecting the infringement and validity of the patent-in-suit pending the disposition of the reexamination." Such a stay would result in the parties engaging in two separate discovery periods -- one for the non-patent claims and one for the patent claims.  Since the parties are engaging in discovery, it

- 7 -

only makes sense to conduct discovery and litigate the entire case at one time.  Accordingly, no stay is warranted.

Indeed, discovery is also necessary in the patent action as it relates to liability and damages as well as secondary considerations of non-obviousness, such as commercial success, copying, long felt but unsolved needs, and prior failure to solve the same problem.  Evidence of secondary considerations of non-obviousness is relevant to both the case at bar and to the PTO reexamination and can only be obtained through discovery.  "[E]vidence rising out of the so-called 'secondary considerations' must always when present be considered en route to a determination of obviousness…Indeed, evidence of secondary considerations may often be the most probative and cogent evidence in the record."  *Stratoflex, Inc., v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983).

Furthermore, plaintiff will be prejudiced by what will be a very significant delay from a PTO reexamination.  The average *ex parte* reexamination pendency is over two years.  U.S. Patent and Trademark Office.  *Ex Parte* Reexamination Filing Data - March 31, 2010, 2, *available at* http://www.uspto.gov/patents/stats/EP_quarterly_report_Mar_31_2010.pdf (last visited April 29, 2010).  Where a third party requests the reexamination, the PTO confirms that the patent is only cancelled in its entirety 13% of the time.  *Id.*  Defendants should not be permitted to continue exploiting plaintiff's patented invention while plaintiff is forced to wait two years to enforce a patent that is, statistically, highly likely to emerge from reexamination.

Defendants overstate the likelihood that the reissued patent will be unenforceable prior to the date of reissuance.  *Bloom Eng'g Co.*, does not stand for the proposition that *any* change by the PTO prevents enforcement before reissuance.  Indeed, immediately after the language cited by defendants, the Court explains that "'Identical' does not mean verbatim, but means at most without substantive change…[and that] the scope of the claims must be the same after reissue, not that the same words must be used."  *Bloom Eng'g Co.*, 129 F.3d at 1250.  However, even if the claims were substantively altered by the PTO, damages still run from the date of reissuance

- 8 -

forward, as does the right to seek injunctive relief, to which much of the discovery will still be applicable.

**B.     Discovery Limitations**

The scope of discovery shall conform to the limitations provided under the Federal Rules of Civil Procedure and Local Rule 26.1, except that any limitations shall run to each *party* rather than each side.

**C.     Local Rule 16.1(e)**

This is a case for patent infringement under 35 U.S.C. §§ 1 *et seq.* and claims related to a Non-Competition Agreement between Gryphon and Keim.   This case is one of "normal" complexity and does not qualify as one that is "'complex' or otherwise appropriate for careful and deliberate monitoring in an individualized and case-specific manner" within the meaning of Local Rule 16.1(e).

**D.     Markman Hearing Tutorials or Testimony**

The parties are not certain at this early stage whether a tutorial or live testimony is appropriate.   The Parties agree to address these issues in their Joint Claim Construction and Prehearing Statement.

**E.     Identification Of Issues For Possible Early Resolution**

The Parties agree that early claim construction may facilitate an early resolution of this matter, and may seek to file early motions for summary judgment based on the Court's claim construction ruling.

**F.     Protective Order**

The Parties anticipate the production of certain information, documents, and things of the Parties subject to discovery or disclosure in this action which may be claimed to be or deemed to contain Confidential Information that contains sensitive, confidential, trade secret and/or proprietary information.   The Parties intend to file a Stipulated Protective Order with the Court that will include procedures for filing documents under seal.   The Parties request that the Court allow the filing of certain documents under seal.

### G.    Electronically Stored Information

(1)     The Parties agree that they have or will institute a general "litigation hold" to preserve all relevant documents, including electronically stored information, and have discussed the issues raised in Fed. R. Civ. P. 26(f)(3) and Local Rule 16.6(A)(7).   The Parties agree that electronically stored information be governed by Rule 26(b)(2)(B).

(2)     The Parties agree that they shall preserve electronically stored information ("ESI") on the Parties' active computer systems and backup computer systems. The Parties shall be entitled to discovery of relevant, non-privileged ESI on the Parties' active computer systems. The Parties shall not be entitled to discovery of ESI on the Parties' backup computer systems except for good cause shown.   By default, any costs associated with retrieving and restoring requested ESI documents from backup computer systems shall be borne by the producing party. Either party may request that the Court shift such costs entirely to the other party.

(3)     Documents maintained in electronic form in a party's ordinary course of business shall be produced in electronic form, as follows:

  a.     All electronically stored information ("ESI") , and paper documents that are produced as scanned images shall be produced as single-page TIFF (tagged image format file) documents.

  The parties shall provide image load files in either Concordance (.opt), Ipro (.lfp), or Summation (.dii) (or as indicated in advance by the Receiving Party), to accompany productions of TIFF images so as to facilitate the use of the produced images by a document management or litigation support system.   The parties shall also provide either a data (.dat) or delimited text (.csv) load file, using the field delimiters required by Summation or Concordance (or as indicated in advance by the Receiving Party), which will include: (1) beginning and ending document numbers and (2) beginning and ending attachment ranges (calculated from the first page of the parent document to the last page of the last attached document) if applicable.   The data load file shall also include the following fields of information where available:

- Hard copy source documents: Custodian or source information.

- Emails: Date sent, time sent, date received, time received, to, from, cc, bcc, subject, and attachment count.  In instances of parent e-mails with attachments, PARENT ID and ATTACH IDs should also be provided for Summation, or the BEGATTACH and ENDATTACH for Concordance (or as indicated in advance by the Receiving Party).

- 10 -

- <u>Non-email electronic documents</u>: File name, path name, date created, date last modified, title, subject, author, company, and custodian.

The extracted metadata or the searchable text (OCR) for non-native or non-searchable native files will be provided as multi-page text (.txt) files. The text files should contain page breaks. In addition, a control list (.lst) will be provided for Summation (or as indicated in advance by the Receiving Party). The multi-page text files may be included in the Image folders or in a separate folder named Fulltext or OCR.

b.      If, after reviewing production of ESI in the format specified above, a Receiving Party believes that it is necessary to review a certain document or documents in native format, the parties agree to engage in discussion regarding production of discrete documents in native form. If native files are produced pursuant to any agreement of the parties, a supplemental data load file shall be provided with the BEGDOC number and the corresponding DOCLINK field setting forth the location of the native file in the production folder.

In order to track the production of any native files being produced pursuant to agreement of the parties, and to facilitate their authentication for use in these proceedings, the parties agree that an MD5 hash value will be assigned to each individual native file produced, and the Producing Party will provide to the Receiving Party, at the time of production, a directory of such hash values. Because these hash values are unique to the specific files being produced, the parties acknowledge the necessity for taking the appropriate steps when loading or otherwise handling these native files to ensure that the files are preserved in the precise form in which they have been produced. It is further understood that any party may require, as a condition to agreement to the authenticity of any native file any other party seeks to utilize in these proceedings, a hash value comparison of any such files with the hash values provided for those files by the Producing Party.

c.      Each party may specify the form in which ESI is to be produced when that ESI is generated by or maintained in Microsoft Excel, Microsoft Access or other database software. If the Producing Party objects to such form, the parties shall undertake reasonable efforts, and if necessary, will meet and confer to resolve any disagreements as to production format prior to the time for production. Where a party produces Microsoft Excel, Microsoft Access or other database software files only in native format, the producing party shall produce a corresponding TIFF image stating "This File Was Produced In Native Format Only."

d.      Nothing contained herein alters the parties' obligations to preserve potentially relevant ESI. The parties acknowledge that opening and copying files to produce ESI may alter some metadata, and that, except for the provisions above with respect to production of certain files in native format, nothing herein requires the parties to prevent such alteration in the process of responding to or complying with discovery requests, such as making or preserving forensic copies, mirror imaging hard drives, or other extraordinary or expensive measures to preserve metadata.

- 11 -

      e.     No party is obligated to produce native text or metadata beyond what has been agreed to above, nor is any party obligated to produce duplicates of documents.  However, if either party shows a good faith reason for the additional metadata or duplicates, the Parties will attempt to resolve the issue, and if they cannot, they will seek the Court's assistance.

(D)    Documents that are not maintained in electronic form in a party's ordinary course of business and that are not scanned into electronic form prior to the date of production may be produced in the same manner in which they are maintained (e.g., hard copies).  Copies of such documents (whether in electronic format or hard copy) may be made available for inspection and copying or may be delivered to the office of counsel for the requesting party.

## IV.   SETTLEMENT

Pursuant to Local Rule 16.1(c), Gryphon made a written proposal of settlement to Defendants on May 13, 2010.  As of the date of this Joint Statement, the Parties have not resolved the issues in dispute.

## V.   MEDIATION

The Parties do not agree to mediation at this time.  The Parties, however, are not adverse to mediation at a later date, and will reevaluate their position on this matter during the course of litigation.

## VI.   TRIAL BY MAGISTRATE JUDGE

At present, the Parties do not consent to trial before a United States Magistrate Judge.

## VII.   CERTIFICATION

The certifications required by Local Rule 16.1(d)(3) for both Parties will be filed concurrently with this Joint Statement.

A/73356254.9/0800549-0000344069

Respectfully Submitted,

**GRYPHON NETWORKS, INC.,**

By its attorneys,


/s/ Joshua M. Dalton
Joshua M. Dalton (BBO #636402)
Lawrence T. Stanley, Jr. (BBO # 657381)
Julie S. Palmer (BBO #676788)
**BINGHAM MCCUTCHEN LLP**
One Federal Street
Boston, MA  02110
617.951.8000


Dated:  September 9, 2010

**CONTACT CENTER COMPLIANCE
CORP. and DAVID KEIM**

By their attorneys,


/s/ Christopher M. Morrison
Karen A. Whitley (BBO #564742)
Christopher M. Morrison (BBO #651335)
**HANIFY & KING, Professional
Corporation**
One Beacon Street, 21st floor
Boston, MA 02108

Edward A. Pennington (*pro hac vice*)
Sid Pandit (*pro hac vice*)
**HANIFY & KING, Professional
Corporation**
1055 Thomas Jefferson St., N.W., Suite 400
Washington, D.C. 20007

- 13 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing and paper or electronic copies will be delivered to those indicated as non-registered participants on September 9, 2010.

/s/ Joshua M. Dalton
Joshua M. Dalton

- 14 -