UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GRYPHON NETWORKS CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-cv-10258 MBB |
| | ) | |
| v. | ) | |
| | ) | |
| CONTACT CENTER COMPLIANCE | ) | |
| CORP., MICHAEL KOVATCH and | ) | |
| DAVID KEIM, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ANSWER OF CONTACT CENTER COMPLIANCE AND COUNTERCLAIMS TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendant Contact Center Compliance ("CCCC" or "Defendant CCCC"), by and through his undersigned counsel, answers the Second Amended Complaint filed by the Plaintiff Gryphon Networks Corp. ("Plaintiff" or "Gryphon") as follows:

## THE PARTIES

1.      Defendant admits that Gryphon Networks Corp. ("Gryphon") is a corporation organized and existing under the laws of the state of Delaware with its principal place of business located in Norwood, Massachusetts.

2.      Defendant admits that CCCC is a California corporation with its principal place of business located in Santa Rosa, California.

1

3.      The allegations of ¶ 3 are directed to a party other than CCCC, and a response by CCCC is therefore not required.  To the extent a response is required, the allegation is denied.

4.      Defendant admits that, upon information and belief, Keim maintains a residence in Roswell, Georgia.

## JURISDICTION AND VENUE

5.      Defendant admits that Gryphon purports to bring claims against the Defendant under the patent laws of the United States, Title 35 of the United States Code, for which jurisdiction is based on 28 U.S.C. §§ 1331 and 1338(a).  Except as expressly admitted Defendant denies each and every other allegation of ¶ 5.

6.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 6, and therefore denies them.

7.      Defendant denies that it has committed any acts violating any rights of Gryphon on which venue, as alleged, is dependent and the allegations of ¶ 7.

8.      Defendant admits that a document entitled Employee Confidentiality, Inventions, and Non-Competition Agreement ("Agreement") is attached to the Complaint and that it contains the excerpts quoted in ¶ 8 of the Second Amended Complaint, and further answering, states that the Agreement speaks for itself.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 8, and therefore denies them.

## FACTUAL BACKGROUND

9.      Defendant admits that Gryphon purports to be in the business of contact governance solutions.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 9, and therefore denies them.

10.     Defendant admits that Gryphon sells a product named Call Advisor.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 10, and therefore denies them.

11.     Defendant admits that on December 10, 2000 the United States Patent Office issued U.S. Patent No. 6,130,9237 ("the '937 patent"), entitled "System and Process for Automatic Storage, Enforcement and Override of Consumer Do-Not-Call Requests" to Keith Alan Fotta and that a copy of the '937 patent is attached to the Second Amended Complaint. Defendant denies that the '937 patent was duly and legally issued.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 11, and therefore denies them.

12.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 12, and therefore denies them.

13.     Defendant admits that it makes Do-Not-Call dial protection systems for call centers, including its SmartBlock™ product.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 13, and therefore denies them.

14.     Admitted.

15.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 15, and therefore denies them.

16.     Defendant admits that CCCC has conducted a nominal percentage of its business in Massachusetts, but denies that it has "regularly" conducted business in this judicial district. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 16, and therefore denies them.

17.     Denied.

18.     Upon information and belief, Defendant admits the allegations of ¶ 18.

19.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 19, and therefore denies them.

20.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 20, and therefore denies them.

21.     Defendant admits that the purported Agreement contains the excerpts quoted in ¶ 21 of the Amended Complaint, and further answering, states that the Agreement speaks for itself.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 21, and therefore denies them.

22.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 22, and therefore denies them.

23.     Defendant admits that the purported Agreement contains the excerpts quoted in ¶ 23 of the Amended Complaint, and further answering, states that the Agreement speaks for itself.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 23, and therefore denies them.

24.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 24, and therefore denies them.

25.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 25, and therefore denies them.

26.     Defendant admits that the purported Agreement contains the excerpts quoted in ¶ 26 of the Amended Complaint, and further answering, states that the Agreement speaks for

itself. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 26, and therefore denies them.

27.     Defendant admits that the purported Agreement contains the excerpts quoted in ¶ 27 of the Amended Complaint, and further answering, states that the Agreement speaks for itself.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 27, and therefore denies them.

28.     Defendant admits that the purported Agreement contains the excerpts quoted in ¶ 28 of the Amended Complaint, and further answering, states that the Agreement speaks for itself.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 28, and therefore denies them.

29.     Defendant admits that the purported Agreement contains the excerpts quoted in ¶ 29 of the Amended Complaint, and further answering, states that the Agreement speaks for itself.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 29, and therefore denies them.

30.     Defendant admits that the purported Agreement contains the excerpts quoted in ¶ 30 of the Amended Complaint, and further answering, states that the Agreement speaks for itself.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 30, and therefore denies them.

31.     Defendant admits that the purported Agreement contains the excerpts quoted in ¶ 31 of the Amended Complaint, and further answering, states that the Agreement speaks for itself.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 31, and therefore denies them.

32.     Defendant admits that the purported Agreement contains the excerpts quoted in ¶ 32 of the Amended Complaint, and further answering, states that the Agreement speaks for itself.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 32, and therefore denies them.

33.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 33, and therefore denies them.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 34, and therefore denies them.

34.     Defendant admits that Keim is performing services for CCCC as a Director of Sales.  Defendant denies that Keim is an employee of CCCC.

35.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 35, and therefore denies same.

36.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 36, and therefore denies them.

37.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 37, and therefore denies them.

38.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 38, and therefore denies them.

39.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 39, and therefore denies them.

40.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 40, and therefore denies them.

41.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 41, and therefore denies them.

42.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 42, and therefore denies them.

43.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 43, and therefore denies them.

44.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 44, and therefore denies them.

45.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 45, and therefore denies them.

46.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 46, and therefore denies them.

47.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 47, and therefore denies them.

48.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 48, and therefore denies them.

49.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 49, and therefore denies them.

50.     Defendant admits that Keim performed services for CCCC as a Director of Sales. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 50, and therefore denies them.

51.     To the extent that the allegations of ¶ 51 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

52.     Denied.

53.     Denied.

54.     The allegations of ¶ 54 are directed to a party other than CCCC, and a response by CCCC is therefore not required.  To the extent a response is required, the allegations are denied.

55.     Denied.

56.     Denied.

57.     Defendant admits that Keim did not provide CCCC with a copy of the Agreement. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 57, and therefore denies them.

58.     The allegations of ¶ 58 are directed to a party other than CCCC, and a response by CCCC is therefore not required.  To the extent a response is required, the allegations are denied.

59.     Defendant admits that Gryphon sent Keim a letter on February 16, 2010 and admits that a copy of the letter was sent to Michael Kovatch, CEO of CCCC.  Defendant admits that a copy of the Agreement was attached to the letter.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 59, and therefore denies them.

60.     Admitted.

61.     Denied.

## COUNT ONE-INFRINGEMENT OF THE '937 PATENT

### (Against CCCC)

62.     Defendant incorporates its responses to paragraphs 1 through 61 as though fully set forth herein.

63.     Defendant admits that the Complaint purports to bring an action arising under the United States Patent Laws, Title 35, United States Code, but denies that Gryphon has any viable claim there under.

64.     Denied.

65.     Denied.

66.     Denied.

67.     Denied.

68.     Denied.

## COUNT TWO-BREACH OF CONTRACT

### (Against Keim)

69.     Defendant incorporates its responses to paragraphs 1 through 68 as though fully set forth herein.

70.     The allegations of ¶70 are directed to a party other than CCCC, and a response by CCCC is therefore not required.  To the extent a response is required, the allegation is denied.

71.     The allegations of ¶71 are directed to a party other than CCCC, and a response by CCCC is therefore not required.  To the extent a response is required, the allegation is denied.

72.     The allegations of ¶72 are directed to a party other than CCCC, and a response by CCCC is therefore not required.  To the extent a response is required, the allegation is denied.

## COUNT THREE-BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### (Against Keim)

73.     Defendant incorporates its responses to paragraphs 1 through 72 as though fully set forth herein.

74.     The allegations of ¶74 are directed to a party other than CCCC, and a response by CCCC is therefore not required.  To the extent a response is required, the allegation is denied.

75.     The allegations of ¶75 are directed to a party other than CCCC, and a response by CCCC is therefore not required.  To the extent a response is required, the allegation is denied.

76.     The allegations of ¶76 are directed to a party other than CCCC, and a response by CCCC is therefore not required.  To the extent a response is required, the allegation is denied.

77.     The allegations of ¶77 are directed to a party other than CCCC, and a response by CCCC is therefore not required.  To the extent a response is required, the allegation is denied.

## COUNT FOUR-MISAPPROPRIATION OF CONFIDENTIAL INFORMATION

### (Against All Defendants)

78.     Defendant incorporates its responses to paragraphs 1 through 77 as though fully set forth herein.

79.     To the extent that the allegations of ¶ 79 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

80.     To the extent that the allegations of ¶ 80 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

## COUNT FIVE-TAKING OF TRADE SECRETS

## (M.G.L. c.93 §§ 42, 42A)

## (Against Keim)

81.     Defendant incorporates its responses to paragraphs 1 through 80 as though fully set forth herein.

82.     The allegations of ¶ 82 are directed to a party other than CCCC, and a response by CCCC is therefore not required.  To the extent a response is required, the allegations are denied.

83.     The allegations of ¶ 83 are directed to a party other than CCCC, and a response by CCCC is therefore not required.  To the extent a response is required, the allegations are denied.

84.     The allegations of ¶ 84 are directed to a party other than CCCC, and a response by CCCC is therefore not required.  To the extent a response is required, the allegations are denied.

## COUNT SIX-TAKING OF TRADE SECRETS

## (M.G.L. c.93 §§ 42, 42A)

## (Against CCCC and Kovatch)

85.     Defendant incorporates its responses to paragraphs 1 through 84 as though fully set forth herein.

86.     To the extent that the allegations of ¶ 86 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

87.     To the extent that the allegations of ¶ 87 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

## COUNT SEVEN-CONVERSION

### (Against All Defendants)

88.     Defendant incorporates its responses to paragraphs 1 through 87 as though fully set forth herein.

89.     To the extent that the allegations of ¶ 89 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

90.     To the extent that the allegations of ¶ 90 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

## COUNT EIGHT-INTERFERENCE WITH CONTRACT

### (Against All Defendants)

91.     Defendant incorporates its responses to paragraphs 1 through 90 as though fully set forth herein.

92.     To the extent that the allegations of ¶ 92 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

93.     To the extent that the allegations of ¶ 93 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

## COUNT NINE-INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONS

### (Against All Defendants)

94.     Defendant incorporates its responses to paragraphs 1 through 93 as though fully set forth herein.

95.     To the extent that the allegations of ¶ 95 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

96.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 96, and therefore denies them.

97.     To the extent that the allegations of ¶ 97 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

98.     To the extent that the allegations of ¶ 98 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

99.     To the extent that the allegations of ¶ 99 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

100.    To the extent that the allegations of ¶ 100 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

## COUNT TEN-UNFAIR COMPETITION
### (Against All Defendants)

101.    Defendant incorporates its responses to paragraphs 1 through 100 as though fully set forth herein.

102.    To the extent that the allegations of ¶ 102 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

103.    To the extent that the allegations of ¶ 103 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of ¶ 103, and therefore denies them.

104.    To the extent that the allegations of ¶ 104 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

105.    To the extent that the allegations of ¶ 105 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

106.    To the extent that the allegations of ¶ 86 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

107.    To the extent that the allegations of ¶ 86 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

## COUNT ELEVEN-UNFAIR AND DECEPTIVE TRADE PRACTIVES
### (M.G.L. c.93A, §11)
### (Against CCCC)

108.    Defendant incorporates its responses to paragraphs 1 through 107 as though fully set forth herein.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Denied.

113.    Denied.

114.    Denied.

## COUNT TWELVE-COMPUTER FRAUD AND ABUSE ACT

## (18 U.S.C. §1030)

## (Against Keim)

115.    Defendant incorporates its responses to paragraphs 1 through 114 as though fully set forth herein.

116.    The allegations of ¶ 116 are directed to a party other than CCCC, and a response by CCCC is therefore not required.  To the extent a response is required, the allegations are denied.

117.    The allegations of ¶ 117 are directed to a party other than CCCC, and a response by CCCC is therefore not required.  To the extent a response is required, the allegations are denied.

118.    The allegations of ¶ 118 are directed to a party other than CCCC, and a response by CCCC is therefore not required.  To the extent a response is required, the allegations are denied.

119.    The allegations of ¶ 119 are directed to a party other than CCCC, and a response by CCCC is therefore not required.  To the extent a response is required, the allegations are denied.

## COUNT THIRTEEN-DECLARATORY JUDGMENT

## (Against CCC and Keim)

120.    Defendant incorporates its responses to paragraphs 1 through 119 as though fully set forth herein.

121.    To the extent that the allegations of ¶ 121 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

122.    To the extent that the allegations of ¶ 122 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

123.    To the extent that the allegations of ¶ 123 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

124.    To the extent that the allegations of ¶ 124 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

125.    To the extent that the allegations of ¶ 125 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

## COUNT FOURTEEN-INJUNCTIVE RELIEF
### (Against All Defendants)

126.    Defendant incorporates its responses to paragraphs 1 through 125 as though fully set forth herein.

127.    To the extent that the allegations of ¶ 127 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

128.     To the extent that the allegations of ¶ 128 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

129.     To the extent that the allegations of ¶ 129 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

130.     To the extent that the allegations of ¶ 130 are directed to a party other than CCCC, a response by CCCC is not required.  To the extent a response is required, the allegations are denied.

## PRAYER FOR RELIEF

The Defendant denies that Gryphon is entitled to any of the relief sought in the Prayer for Relief.

## AFFIRMATIVE DEFENSES

Without altering the burden of proof, the Defendant asserts the following defenses, which are based upon an investigation that is not complete and prior to the results of any discovery from Gryphon.  The Defendant's investigation of its defenses is continuing, and the Defendant reserves the right to assert all affirmative defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the patent laws of the United States and any other defense, at law or in equity, that may now exist or in the future be available based upon discovery and further investigation in this case.

## FIRST AFFIRMATIVE DEFENSE

## (Patent Invalidity)

Upon information and belief, the '937 patent is invalid because it fails to meet the conditions for patentability set forth in 35 U.S.C. §§ 101, 102, 103, and 112.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff has failed to state a claim for which relief can be granted.

## THIRD AFFIRMATIVE DEFENSE

The Agreement is not enforceable because it is unduly broad in duration, scope, and territory.

## FOURTH AFFIRMATIVE DEFENSE

The Agreement is not enforceable because the information Plaintiff seeks to protect is not confidential and does not constitute trade secrets.

## FIFTH AFFIRMATIVE DEFENSE

The Agreement is not enforceable against Keim, a Georgia resident, or CCCC, a California corporation, because the Agreement violates the law and public policy of those states.

## SIXTH AFFIRMATIVE DEFENSE

The Agreement fails for lack of consideration.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of waiver and/or estoppel.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint must be dismissed for improper venue.

## NINTH AFFIRMATIVE DEFENSE

This Court lacks personal jurisdiction over the Defendant.

## TENTH AFFIRMATIVE DEFENSE

The Plaintiff's Claims are barred by the doctrine of novation.

## ELEVENTH AFFIRMATIVE DEFENSE

The Plaintiff's Claims arising out of the Agreement must be severed from the remaining claims because they do not arise out of the same transaction or occurrence and common questions of law and fact do not exist.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands.

## COUNTERCLAIM OF DEFENDANT CONTACT CENTER COMPLIANCE

Defendant Contact Center Compliance Corp. ("CCCC") for its Counterclaim for unfair competition, unfair and deceptive trade practices, declaratory judgment and injunctive relief against Plaintiff Gryphon Networks Corp. ("Gryphon") alleges as follows:

## THE PARTIES

1.      CCCC is a corporation organized and existing under the laws of the State of California with its principal place of business located in Santa Rosa, California.

2.      Gryphon is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in Norwood, Massachusetts.

3.      This Court has subject matter jurisdiction over the counterclaim pursuant to 28 U.S.C. §§ 2201 and 2202.

4.      Gryphon has submitted itself to the jurisdiction and venue of this Court by having this action in this Court.

5.      This is also an action for declaratory judgment of non-infringement and invalidity,

arising under the Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.

6.      CCCC also brings an action for declaratory judgment regarding the invalidity

and/or unenforceability of the Agreement purportedly signed by defendant David Keim.

## FACTUAL BACKGROUND

7.      CCCC provides compliance solutions to the telemarketing sector, including

database management and other services for purposes of compliance with state and federal Do

Not Call (DNC) lists.

8.      Gryphon develops and sells systems for compliance with state, federal, and

international DNC restrictions.

9.      Gryphon is a direct competitor of CCCC in the DNC compliance business.

10.     Both CCCC and Gryphon have clients who engage in telemarketing (placing

outbound calls to consumers for the purpose of selling goods and/or services) in the United

States.

11.     All entities who telemarket in the United States must (unless exempt from these

requirements) obtain a Subscriber Account Number (a "SAN") from the Federal Trade

Commission's ("FTC") National Do Not Call Registry ("NDNCR") program.  To obtain a SAN,

an entity must go to the FTC's NDNCR website and input information and pay for the privilege

of downloading telephone numbers that have been submitted by consumers wishing to be placed

on the NDNCR.

12.     The FTC's NDNCR program was established in 2003.

13.     The current costs for accessing and downloading data from the NDNCR is $55.00 per area code per year (the first five area codes are free), up to a maximum annual fee of $15,058.

14.     All non-exempt telemarketing entities must thereafter ensure that none of its outbound telephone calls are placed to the numbers appearing on the NDNCR; failure to do so can result in substantial fines levied by the FTC, the FCC, and/or state regulatory authorities.

15.     Access to the NDNCR is limited to telemarketers, sellers, others engaged in or causing others to engage in telephone calls to consumers, service providers acting on behalf of such persons, and any government agency that has law enforcement authority.

16.     Prior to accessing the NDNCR, a person must provide the identifying information required by the operator of the registry to collect the fee, and must certify, under penalty of law, that the person is accessing the registry solely to comply with the provisions of the NDNCR rules, or to otherwise prevent telephone calls to telephone numbers on the registry.

17.     In addition to the NDNCR, there are thirteen states that operate additional, state-specific DNC lists.  These individual state-run DNC lists, like the NDNCR, require telemarketers to register with the program and to make payment in order to gain access to state-specific DNC information.

18.     These individual state-run DNC programs have been in existence since at least 2003.

19.     CCCC and Gryphon are in the business of helping telemarketing entities ensure that their outbound calling practices are in compliance with state and federal DNC programs.

20.     In order to effectuate this service, CCCC and Gryphon collect all state and federal DNC information to be used in their DNC compliance services.

21.     State and Federal regulators are keenly aware of the potential for abuse of this system, i.e., a vendor such as CCCC or Gryphon could amass all state and federal DNC numbers, and then offer DNC compliance services to telemarketing entities with the understanding that such entities do not have to register, and pay, for state and federal DNC information.  It is accordingly illegal for a compliance vendor to provide DNC compliance services to telemarketing entities unless such entities have registered and paid for all appropriate DNC databases, and continue to register/pay as appropriate on an ongoing basis.

22.     Were a company to engage in such an illegal practice, it would gain a significant, and unfair, competitive advantage against companies that abide by such rules, i.e., the company that did not require its clients to pay for state and federal DNC lists would be able to offer its services at a "discount" relative to companies that do not engage in this practice.  Rather than having to pay for <u>both</u> the DNC list information and the DNC compliance service, clients working with such a company would only have to pay for the company's DNC compliance services, at considerable savings.

23.     Upon information and belief, Gryphon actively and knowingly engages in the practice of providing its DNC compliance services to telemarketing entities that are not registered as appropriate with state and/or federal DNC programs.  This can take the form of providing services to entities who are not registered at all with such programs, or who have allowed their registrations to lapse, or who (for NDNCR purposes) have obtained a SAN by purchasing only a minimal number of area codes, but then using Gryphon services to place calls across the United States (i.e., to area codes that have not been properly purchased by said entity).

24.     Upon information and belief, Gryphon's management and owners are aware of the fact that Gryphon provides its services to clients who are not registered as appropriate with

state and/or federal DNC lists.

25.     Upon information and belief, Gryphon's management and owners are aware of the fact that providing its clients with DNC compliance services without requiring proper registration with state and federal DNC programs provides Gryphon with an unfair competitive advantage against CCCC.

26.     Upon information and belief, Gryphon currently provides, and/or has provided, DNC compliance services to companies who specifically would have engaged CCCC for this purpose, but for the fact that Gryphon provides its DNC compliance services to companies with no requirement that they register as appropriate with state and/or federal DNC list programs.

27.     The average amount that a CCCC client spends for CCCC's ongoing DNC compliance service is $6,000.00 per year.

28.     If not for the fact that Gryphon engaged in unfair competition by offering its DNC compliance services with no requirement that its clients sign up for state and/or federal DNC lists, CCCC would have gained significantly more market share in the DNC compliance space. CCCC estimates that it would have a minimum of 100 additional clients but for Gryphon's unfair business practices.

## COUNT ONE – UNFAIR COMPETITION

29.     CCCC repeats and realleges the allegations made in the preceding paragraphs as if fully set forth at this point herein.

30.     Gryphon's acts as set forth herein constitute unfair competition, willful, unfair, and deceptive acts or practices within the Commonwealth of Massachusetts and in violation of Massachusetts's common law.

31.     Both CCCC and Gryphon are engaged in trade and commerce in the Commonwealth of Massachusetts.

32.     Defendants wrongful and illegal activities have intended to cause, have caused, and unless enjoined by this Court, will continue to cause irreparable injury and other damage to CCCC's business.

33.     Gryphon's conduct as described above has been willful, wanton, reckless, and in violation of the rights of CCCC.

34.     As a result of Gryphon's acts alleged above, CCCC has suffered, and continues to suffer, serious injury.

35.     As a result of Gryphon's acts alleged above, CCCC is entitled to damages in an amount to be determined at trial.

## COUNT TWO – UNFAIR AND DECEPTIVE TRADE PRACTICES

36.     CCCC repeats and realleges the allegations made in the preceding paragraphs as if fully set forth at this point herein.

37.     Gryphon is a business engaged in trade or commerce in the Commonwealth of Massachusetts.

38.     Gryphon has engaged, and continues to engage, in deceptive trade practices by purposefully and willfully providing compliance services to its clients who are not registered as appropriate with state and/or Federal DNC lists.

39.     The unfair and deceptive trade practices occurred primarily in the Commonwealth of Massachusetts.

40.     Gryphon intentionally and willfully violated G.L. c. 93A, §11.

41.     As a result of Gryphon's unfair and deceptive trade practices, CCCC has suffered substantial monetary damage from lost business opportunities related to Gryphon's ability to market its DNC compliance services at an overall lower cost than CCCC.

## COUNT THREE – TELEMARKETING AND CONSUMER FRAUD AND ABUSE PREVENTION ACT

42.     CCCC repeats and realleges the allegations made in the preceding paragraphs as if fully set forth at this point herein.

43.     Gryphon has intentionally and willfully violated Title 15, Chapter 87 of the United States Code ("The Telemarketing and Consumer Fraud and Abuse Prevention Act"), and the regulations issued there under by the Federal Trade Commission (16 CFR § 310.1 et seq.)

44.     CCCC has been, and continues to be, adversely affected by the pattern and practice of Gryphon's actions as outlined above.

45.     CCCC became aware of Gryphon's actions with regard to failing to ensure proper registration of its clients to state and federal Do Not Call programs less than three (3) years ago.

46.     In accordance with 15 U.S.C. § 6104, CCCC has provided the Federal Trade Commission prior written notice with regard to this action.

47.     As a result of Gryphon's actions, as outlined above, CCCC has suffered substantial monetary damages in an amount to be determined at trial, but in no event less than $50,000.

## COUNT FOUR – INJUNCTIVE RELIEF

48.     CCCC repeats and realleges the allegations made in the preceding paragraphs as if fully set forth at this point herein.

49.     As set forth above, Gryphon is knowingly and willingly violating state and federal law, and aiding and abetting the violation of state and federal law, for the purpose of gaining an unfair competitive advantage in the DNC compliance marketplace.  Gryphon's practices in this regard are ongoing, and upon information and belief, include a significant percentage of its client-base.

25

50.     CCCC has no adequate remedy at law for Gryphon's unfair practices in this regard.

51.     The balance of equities favors the entry of an injunction against Gryphon, preventing it from providing DNC compliance services to clients who are not registered as appropriate with state and federal DNC list programs is therefore required.

## COUNT FIVE-DECLARATORY JUDGMENT-INVALIDITY

52.     CCCC repeats and realleges the allegations made in the preceding paragraphs as if fully set forth at this point herein.

53.     The '937 patent is invalid because it fails to meet the conditions for patentability set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

54.     On February 24, 2010, Gryphon filed its Amended Complaint in this Court.  In its Amended Complaint, Gryphon charges CCCC with infringement of the '937 patent.

55.     CCCC is entitled to declaratory judgment that the '937 patent is invalid.

## COUNT SIX- DECLARATORY JUDGMENT-UNENFORCEABILITY
## AND/OR INVALIDITY OF THE AGREMENT

56.     CCCC repeats and realleges the allegations made in the preceding paragraphs as if fully set forth at this point herein.

57.     Gryphon has asserted that defendant Keim is bound by the Agreement, which is attached to Gryphon's Complaint, and that CCCC has interfered with Gryphon and Keim's Agreement.

58.     The Agreement purports to contain restrictive covenant obligations including a non-competition covenant, a non-solicitation covenant, and non-recruitment covenants.

59.     The restrictive covenants contained in the Agreement are unreasonable in their duration, territory, and scope and are therefore illegal, unconstitutional, and unenforceable under both Georgia law and California law, where CCCC is located.

60.     Although the Agreement calls for the application of Massachusetts's law, to the extent this Court determines that these restrictions are enforceable under Massachusetts's law, application of that law would be contrary to the public policy of California.

61.     Because CCCC is a California corporation and because the significant majority of CCCC's business has occurred outside of Massachusetts, California has a materially greater interest than Massachusetts in the determination of the validity of and interference with the Agreement.

62.     In the absence of the forum selection clause contained in the Agreement, the laws of a state other than Massachusetts would govern the parties' dispute.

63.     An actual and substantial controversy exists between the parties with respect to the validity and enforceability of the Agreement and therefore with respect to the liability of CCCC, a corporation with a principal place of business in California, a state which has a fundamental policy against the enforcement of restrictive covenants and a materially greater interest in the outcome of this litigation than Massachusetts.

64.     CCCC is entitled to a judgment determining that the Agreement is invalid and/or unenforceable such that CCCC is not liable for interference therewith.

### PRAYER FOR RELIEF

**WHEREFORE,** CCCC prays that this Court enter judgment as follows:

A.     Judgment against Gryphon for all damages incident to the conduct described herein, in an amount to be determined at trial but in no event less than the average billing

charged by CCCC for its DNC compliance services ($6000/year), multiplied by the number of years the NDNCR has been in existence (7), multiplied by the number of clients CCCC estimates it lost due to Gryphon's illegal practices (100), or $4.2 million dollars.

B.      Judgment against Gryphon for treble damages and attorney's fees pursuant to G. L. c. 93A, § 11.

C.      Judgment against Gryphon for the costs of this counterclaim, along with attorney's fees and expert witness costs, pursuant to 15 U.S.C. § 6104(d).

D.      Enjoin Gryphon from providing its DNC compliance services to clients who have not registered as appropriate, on an ongoing basis, with state and federal DNC lists.

E.      Award CCCC such other relief as may be deemed just and equitable.

F.      Deny Plaintiff any relief whatsoever on its claims and dismiss Plaintiff's Complaint with prejudice;

G.      Declare that the '937 patent has not been infringed by CCCC;

H.      Declare that the '937 patent is invalid;

I.      Declare that this case is exceptional under 35 U.S.C. § 285 and that CCCC be awarded costs, expenses and attorneys' fees incurred herein;

J.      Declare that the Employee Confidentiality, Inventions, and Non-Competition Agreement is invalid and/or unenforceable such that CCCC cannot be liable for interference therewith; and

K.      Enter judgment for Defendant on all counts and award CCCC such other and further relief to which it is entitled, in law or equity, as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

The Defendant demands a trial by jury on all issues presented herein.

Respectfully submitted,

CONTACT CENTER COMPLIANCE CORP.

By their attorneys:

   /s/ Thomas E. Kenney                        /s/ William Green
Thomas E. Kenney (BBO # 561590)        William Green, *pro hac vice*
Pierce & Mandell, P.C.                          (California Bar # 129816)
tom@piercemandell.com                          bill@dgglaw.com
11 Beacon Street, Suite 800                     1010 "B" Street, Suite 320
Boston, MA 02108                                San Rafael, CA 94901
Telephone: (617) 720-2444                       Telephone: (415) 442-4646
Facsimile: (617) 720-3693                       Facsimile: (415) 442-4802

   /s/ Patrick W. Jordan
Patrick W. Jordan, pro hac vice
(California Bar No. 52115)
pwj@pjordanlaw.com
1010 "B" Street, Suite 320
San Rafael, CA 94901
Telephone:  (415) 459-9865
Facsimile:  (415) 459-9871

<u>Certificate of Service</u>

     I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants on November 12, 2010.

                                       /s/ William Green
                                       William Green